## Woodward *v.* May and Wife.

The statutory remedy by motion in favor of a security who had paid money for his principal, was held constitutional, when the defendant in the motion submitted to a trial by jury.

IN error to the Circuit Court for the county of Yazoo.

This was a proceeding in the court below by motion under the statute which gives a summary remedy to a surety against his principal, for whom he has paid' money.

Thomas B. Woodward moved the circuit court for judgment against Jesse May and wife, administrators of Smith Butler, deceased, for the sum of $1,285, and interest thereon from the time paid by plaintiff in this motion as security of said Butler to Hardaway & Boykin, in pursuance of the judgment of the circuit court of Yazoo county, obtained at the February special term thereof, in 1838. That an issue was joined between the parties, and by their attornies the cause was submitted to a jury, "to try the issue," who found that the said Woodward was security for the said Smith Butler, and that as such, he paid the money mentioned in said motion, to wit: $1,285 80, upon which verdict a judgment was rendered in favor of the plaintiff; which judgment was afterwards at the same term arrested, and set aside, as appears by the bill of exceptions in the case, on the ground, that the act of the Legislature giving this summary proceeding, is unconstitutional.

Howard for plaintiff in error.

This was a proceeding by motion, by a security against a principal debtor, to recover money which had been paid by him in satisfaction of a judgment on a forthcoming bond.

The defendant in the motion resisted the recovery on two grounds:

1. That the statute giving this remedy is unconstitutional, because it confers an exclusive privilege.

[Woodward *v.* May and Wife.]

2. Because it is in contravention of the right of trial by jury.

The defendant below relied upon the decision of this court, in the case of Smith *v.* Smith. The court is respectfully requested to review that decision.

1. It may be doubted whether the statute giving this remedy by motion is a privilege in any legal sense of that term. The definition of the word was, originally, a private law, or some public act that regarded an individual, "*a particular and peculiar benefit or advantage enjoyed by a person, company, or society, beyond the common advantage of other citizens. Any peculiar benefit or advantage, right, or immunity, not common to others of the human race.*"

"This word 'privilege,' taken in its active sense, is a particular law, or a particular disposition of the law, which grants certain special prerogatives to some persons, contrary to common right." 2d Bouvier's Law Dic. 298. Privilege, as used in the constitution is not synonymous with right. A right to seek redress in a court of justice, is not a privilege, in the legal sense of that term. It is not a special immunity against which it was the policy of the constitution to provide. On the contrary, it is a right common to every citizen in the particular circumstances which enable him to call for such relief.

The proceeding under the statute is not exclusive in its terms, because it is not confined to any particular man or set of men, as A. and B. separated from the community, within the meaning of the constitution. It is neither exclusive nor separate, for the reason that all men may entitle themselves to the benefit of the remedy by becoming securities. The law excludes no man, or men, from the right of having the advantages of this remedy by becoming security. It is a remedy of which any one may avail himself by incurring the liability. Had the remedy by motion been confined to particular men who were securities, then it would have been exclusive. But how can that be exclusive which may *include* every citizen in the community? The object of the constitution was to preserve equal rights, which are not infringed by this law, because the remedy is equally open to all men who choose to place themselves under its operation. The statute which gives a remedy by motion against sheriffs and

[Woodward *v.* May and Wife.]

attorneys for moneys collected, has never been esteemed an exclusive privilege, yet it is confined to a much smaller number of persons than is embraced by the act in question, and can be pursued only by persons who have that particular class of rights to enforce.   A particular remedy to a particular class of rights cannot be said to be exclusive, when no one is excluded from possessing himself of those rights, and thereby entitling himself to the remedy.

If a remedy by motion in favor of a particular class of rights, or persons possessing those rights, is an exclusive privilege, then a remedy by bill and proceedings in chancery is also an exclusive privilege, because no one can be entitled to it except persons who have those peculiar rights to enforce which are cognizable in a court of equity.   If remedies to be pursued in a particular way, or a particular forum, may be justly called privileges, the reasoning will apply as well to proceedings at law as in equity.   A court of chancery is not open to all men, but only to such as have a particular character of grievances to redress.   Persons thus situated have rights not enjoyed by other citizens, but of which all men may become possessed by acquiring similar rights to enforce.   Yet the right to litigate in a court of chancery is as much an exclusive right, as the right of a security to litigate by motion in a court of law.

There are many classes of persons who are exempted from arrest by the operation of law.   Such are judges, jurors, and witnesses while in attendance upon the courts, and many others.

This is a right not enjoyed by other men, yet it is not deemed an exclusive privilege, because the places which confer the privilege are open to all.

The object of the framers of the constitution was to guard against the accumulation of unequal, unjust, and exclusive privileges and immunities in the hands of any man, or set of men, in derogation of the rights of the community at large.   It was not against summary proceedings for the enforcement of legal rights, that this provision of the constitution was aimed, but against those exclusive, tyrannical privileges and exemptions which existed in the feudal ages, and were so much filched from the liberties and common rights of the citizen.   It was the intention of the framers

of the constitution to inhibit all those unjust and insidious exemptions from the burthens of government, and all those monopolies and encroachments of the few upon the rights and natural liberties of the many, which sprung up during the dark ages. The provision was never intended to apply to any peculiar class of remedies which the Legislature might prescribe for the enforcement of legal rights.

It may be further insisted, that a remedy given to a class of men, is not conferred on a *set* of men, or individuals within the contemplation of the constitution. A *set* of men, in the sense of the constitution, means particular men, and exclusive of all others, whereas, a class like those designated in the act of the Legislature, is not exclusive, but open to be embraced by all.

2. In this case there was a trial by a jury, and the defendant in the motion appeared and contested the right of recovery before the jury. In this, the present action is distinguished from the case of Smith *v.* Smith, formerly decided by this court. I understand that case to have been decided mainly on the ground that, the statute giving this remedy was unconstitutional, for the reason that, the act did not secure the right of trial by jury, inasmuch, as it did not point out the means of empannelling a jury to try the issue between the parties, but contemplated a finding of the facts by the court. As the defendant below in this case did not object to the array, or the manner in which the jury was placed in the box, but went to trial on the merits, he is precluded from urging that objection here.

I submit whether the circuit court has not the power to empannel a jury to try any question proper to be submitted to a jury, which may arise upon a motion. It is a necessary incident to the court. It cannot be doubted, that, if the Legislature gave a remedy by motion, with jury trial without prescribing the manner of empannelling the jury, that the court would have the right to award a jury. And, even admitting, that, it was competent for the court to decide the facts, it would still have the discretionary power to submit the question to a jury.

By the provisions of the constitution in relation to the right of jury trial, it was only intended to secure the right at some stage of the proceeding. If the party has ever had that right during

the progress of the controversy, it will be a sufficient compliance with the requisitions of the constitution. In the case of securities under the statute, the indebtedness has always been previously established, and if not by trial by jury, it is because the party has expressly abandoned his right. We may, then, assume that, as against the defendant in this proceeding, the indebtedness had already been established by a trial by jury, before the proceeding on the motion was had.

The satisfaction of the debt by the security in this case, was a matter of record. There could be no further necessity for a jury trial to prove that the defendant owed the debt upon which this proceeding was based, and the payment by the security being a matter of record, could not be disputed, except, on the ground of fraud by the officer returning the fact.

If there had been a discharge of the liability to the security, or the principal had any set-offs, there is no objection to their being introduced and adjudicated upon the motion as an answer to the liability. A jury could have been empannelled to try any facts arising upon such a proceeding. But if payments and set-offs could not have been shown in answer to the motion by the principal, this would have been no legal objection to the proceeding, inasmuch as it would be a ground for equitable relief.

Many instances of summary proceedings upon motion, are to be found in the English jurisprudence. These remedies were familiar to the common law, and existed at the time the trial by jury was declared inviolate by the federal constitution.

Similar remedies are to be found in the jurisprudence of most of the states, and they never have been esteemed as in contravention of the right of jury trial.

Mr. Justice TURNER delivered the opinion of the court.

This was a proceeding in the court below, under the statute which gives a summary mode of recovery in behalf of a surety, who has paid money for his principal.

The act in question has long since received a judicial construction in the old supreme court of the state, and the practice under it, as far as my experience went, was conformable thereto. See

Walker's Reports, 495.    Brown *v.* Oldham, Revised Code, 142, sec. 160.

In the present case, the following facts appear by the record sent up, that Thomas B. Woodward moved the circuit court for judgment against Jesse May and wife, administrators of Smith Butler, deceased, for the sum of $1,285, and interest thereon from the time paid "by plaintiff in this motion as security of said Butler to Hardaway & Boykin, in pursuance of the judgment of the circuit court of Yazoo county, obtained at the February special term thereof, in 1838," that an issue was joined between the parties, and by their attornies the cause was submitted to a jury "to try the issue," who found that the said Woodward was security for the said Smith Butler, and that as such he paid the money mentioned in said motion, to wit, $1,285 80, upon which verdict a judgment was rendered in favor of the plaintiff, which judgment was afterwards at the same term arrested and set aside, as appears by the bill of exceptions in the case, on the ground that the act of assembly, giving this summary proceeding, is unconstitutional, and the case of Smith *v.* Smith, in 1 Howard's Rep. p. 102, was relied on.

This writ of error is sued out, and the error assigned is that the court below arrested the judgment.

There is no difficulty in my mind in reversing the judgment of the court below, and directing judgment to be rendered in favor of the plaintiff in the motion, inasmuch as it appears that the parties appeared voluntarily in court, made up an issue and tried it by jury, who rendered their verdict, and it appearing also, that the judge before whom the cause was tried, was satisfied with the verdict and arrested the judgment merely on the ground of the decision in 1 Howard, 102.

Being entirely satisfied in my own mind, that this mode of proceeding by a surety against his principal, is not unconstitutional, and that the question has heretofore been settled by a competent tribunal, I am not disposed to go again into the discussion of the question; especially, as in this case, there was a voluntary appearance of the defendant, and a trial by jury.

I will however remark, as in the case of Brown *v.* Oldham, that

[Woodward *v.* May and Wife.]

the court should be exceedingly guarded in rendering judgment on such motions; that the facts necessary to show that the plaintiff in the motion is a mere surety, should appear on the record and proceedings of a court of competent jurisdiction, that the judgment against the surety should likewise appear, that the evidence of the payment of the money by the surety must be such as to leave no doubt of the fact, that I am almost inclined to think that nothing less than the receipt and return of an officer of court shewing the payment to have been made by the surety, should be received.

There is a class of cases where this summary remedy would not be allowed, at least without a trial by jury, and that is, where it does not appear of record, that the plaintiff is surety. For instance, in case of promissory notes, made jointly by A and B, where B is in reality the surety, but appears as principal on the note.

I will further remark, that there are many cases where the courts render judgments against sureties without suit or trial by jury, as on forthcoming bonds and appeal bonds, and the constitutional right to do so, is every where admitted.

The judgment must be reversed, and judgment be rendered for the plaintiff, according to the verdict of the jury.

Judge SHARKEY dissented.